### RAPELYE and PURDY *against* BAILEY.

Where the defendant, in the country addressed a letter to the plaintiffs in the city of *New-York,* stating that the defendant's brother *R.* wished to go into business in that city, by retailing goods in a small way, and promising to hold himself accountable for such goods, furnished by the plaintiffs, as *R.* should call for, from 300 to 500 dollors worth; in consequence of which the plaintiffs furnished *R.* with divers parcels of goods, from the 11th of *September,* 1817, to the 28th of *October,* 1818; this was held to be a continuing guaranty, to the amount specified, and was not limited to the bill of parcels first delivered.

A new trial having been granted, in this case, pursuant to the advice of the Court, (3 *Conn. Rep.* 438. 445.) the plaintiffs amended their declaration, by adding two new counts; and the cause was tried again, at *Brooklyn, September* term, 1823, before *Bristol,* J.

The plaintiffs gave in evidence the following letter: "Messrs. *Rapelye & Purdy;* Gentlemen, My brother *Roswell* is wishing to go into business in *New-York,* by retailing goods in a small

*New-London, July, 1823.*

*Cook v. Swan.*

way.   Should you be disposed to furnish him with such goods as he may call for, from 300 to 500 dollars worth,  I will hold myself accountable  for the payment, should he not pay, as you and he shall agree.

*Roger Bailey."*

*Lebanon, September 9th*, 1817.

And the plaintiffs claimed to have proved, that after such letter came into their hands, they furnished to *Roswell Bailey*, on the strength thereof, divers quantities of goods,  from the 11th of *September*, 1817, to the 28th of *October*, 1818, and exhibited their account of goods so delivered to him ; in which account the first bill of goods delivered him was charged as delivered on the 11th of *September*, 1817 ; the second, on the 12th of *October* in that year ; and also of divers other bills of parcels, from time to time, down to the 28th of *October*, 1818.   The defendant claimed, and prayed the judge to instruct the jury, that in this action the plaintiffs could not recover for goods delivered on the letter of credit any farther than the amount of the value of the goods contained in the first bill of parcels, delivered by the plaintiffs to *Roswell Bailey*, on the strength of such letter. But the judge charged the jury, that the plaintiffs were entitled to recover of the defendant the full amount of articles proved to have been delivered, by the plaintiffs to *Roswell Bailey*, not only on the 11th of *September*, 1817, but at all other times between that day and the 28th of *March*, 1818.

The jury returned a verdict accordingly ; and the defendant moved for a new trial, on the ground of a misdirection.

*T. S. Williams* and *Welch*, in support of the motion, contended, That upon a just construction of the letter of credit, the defendant was liable only for the amount of the first bill of goods taken up.   The object of the defendant was, to furnish his brother *Roswell* with the means of setting up business, in *New-York*, at that time ; and the letter was written with reference to his situation at that time.   The defendant never intended to give a credit for an indefinite period.   By the construction claimed by the plaintiffs, the defendant might be subjected for any balance due from *Roswell*, short of 500 dollars, at the expiration of five years.   They referred to *Rogers* & al. v. *Warner* & al. 8 *Johns. Rep.* 119.   *Walsh* and *Beekman* v. *Bailie*, 10 *Johns. Rep.* 180.

*Hill*, contra, contended, That the letter of credit was a con-

tinuing guaranty for the amount of 500 dollars. This construction comports best with the expressions of the letter, and is best adapted to effect the object of the parties. *Hutchinson* v. *Bell*, 1 *Taun.* 558. *Sturges* v. *Robbins*, 7 *Mass. Rep.* 301. *Merle &* al. v. *Wells*, 2 *Campb.* 413. *Mason* v. *Pritchard*, 2 *Campb.* 436. S. C. 12 *East*, 227.

*Goddard*, on the same side, was stopped by the Court.

Hosmer, Ch. J. The plaintiffs, to support their declaration, gave in evidence a letter of credit, addressed to them, by the defendant, in which, after having mentioned, that his brother *Roswell Bailey*, wished to enter into business, by retailing goods in *New-York*, in a small way, they were requested to furnish him with from 300 to 500 dollars worth of such merchandize as he might want, and the defendant, if he should not fulfil his contract, would be accountable for the payment. Upon the above letter of credit, the plaintiffs furnished *Roswell Bailey* with a quantity of goods, on the 11th of *September*, 1817, and several other parcels, between that date, and the 28th of *March*, 1818. The defendant insisted, that on the true construction of the preceding promise, he was responsible, only for the goods first received; but the Judge, in the court below, charged the jury, that he was answerable for all the articles delivered.

The words of the contract, ought to be taken as strongly against the defendant as the sense of them will admit. If a limitation was intended as to the time, or manner of delivery, why was it not specified, as was the limitation relative to the amount? The plain meaning of the agreement, undoubtedly, is, if you, the plaintiff, will, within a reasonable time, supply my brother with goods, "as he shall want them," not exceeding five hundred dollars, unless he shall pay you agreeably to contract, I will be responsible. If language has any signification, the words of the letter of credit, reach precisely to this extent. I cannot entertain a doubt, that all the goods furnished, were embraced by the words, and the obvious meaning of the engagemgnt. If one delivery of goods only had been contemplated, the defendant should have said so, and not have misled the plaintiffs, by a request that they would supply them indefinitely.

This clause of the contract, requesting goods to be furnished as his brother should want, is decisive to show, that the time

*Windham,*
*July,*
*1823.*

Rapelye
*v.*
Bailey.

and manner of the betrustment, was entirely dependent on the *wants* of the original debtor ; and so far from implying a limitation in this particular, they repel the supposition.

If the above construction required confirmation, it would receive it from the subject matter of the contract. The defendant's object was, most unquestionably, to accommodate his brother, by furnishing a credit for such supplies, as his small business, from time to time, might demand ; and this is apparent from the whole scope of the engagement.

The case of *Walsh* and *Beekman* v *Bailie,* 10 *Johns. Rep.* 180. cited by the defendant, has no bearing on the matter in controversey. The plaintiffs were desired, by the defendant, to supply Messrs. *John* and *George Sherman* with goods, on the best terms, and instead of doing this, they referred them to one *Dox,* a trader in the country, who having delivered the goods, the plaintiffs brought their suit, to recover the price agreed on. The reply of the defendant to this action was conclusive. I made no contract, said he, to be responsible for goods furnished by *Dox,* nor by any other house than yours. I knew, that you, living in *Albany,* had the means and the capital to make the supply on liberal terms ; but that *Dox,* who lived far in the interior of the country, and obtained his goods on credit from you, could furnish them on the same terms, I did not believe. In all events, I have a right to say, *Non hæc in fœdera veni.*

The case of *Rogers* & al. v. *Warner* & al. 8 *Johns. Rep.* 119. is not analogous with the one under discussion. The defendants gave a letter of credit on the plaintiffs, to their son, declaring a willingness to lend their names as security "for any amount they might wish." Considering that the credit was unlimited, in *point of amount ;* that the persons credited, from time to time, took goods, and *paid for them* ; and afterwards received another parcel, *for which they gave their note,* and to recover the amount of which, a suit was *now* brought on the preceding contract ; the court was of opinion, that the defendants were not liable. "It would be unjust and unreasonable to extend the engagement, to one *indefinite credit,* for *an indefinite time.* The plaintiffs probably did not understand it so ; for after goods had been, at several times, taken upon credit, and paid for, *they took a note for the last parcel,* which was above a year and a half after the first transaction." None of the peculiar features of the preceding case are to be found in the one before the court.

In *Hutchinson* v. *Bell,* 1 *Taun.* 558. an action was sustained upon the false representation of a person's credit, to whom goods had, from time to time, in confidence of its being true, been delivered, and a recovery was had for the amount of the last parcel of goods delivered.

The case of *Mason* v. *Pritchard,* 2 *Campb.* 436. was an action of *assumpsit* on a guaranty, by which the defendant promised the plaintiff to be responsible to him for any goods " he hath, or may supply my brother *William Pritchard* of *Hay,* to the amount of 100 pounds." After this engagement, the plaintiff supplied *William Pritchard* with goods above the value of 100 pounds, for which he had been regularly paid ; and continuing to deal with him, he furnished him with the goods, for which the present action was brought. A verdict was rendered in favour of the plaintiff, and the case was brought before the court of King's Bench. 12 *East* 227. "This" said they, " was a continuing or standing guaranty to the extent of the 100 pounds, which might, *at any time,* become due for goods supplied until the credit was recalled." The above case is obviously co-extensive with the one under discussion, and goes beyond it.

In *Merle* & al. v. *Wells,* 2 *Campb.* 413 a determination was had, in a case nearly resembling the one on trial. It was an action of *assumpsit* on a guaranty contained in a letter from the defendant to the plaintiffs, in which he said, "I consider myself bound to you for any debt my brother may contract, not exceeding 100 pounds, after this date." The plaintiffs continued to supply the defendant's brother with goods in his business, for more than a year ; during which period, they had several times balanced accounts with him, and he had paid them more than the sum of 100 pounds. A question was raised, whether the defendant's guaranty was limited, to the first 100 pounds, advanced by the plaintiffs, or extended to any sum of that amount, which the defendant should thereafter owe them. " I think" said Lord *Ellenborough,* " the defendant was answerable for any debt not exceeding 100 pounds, which *William Wells* might, *from time to time,* contract with the plaintiffs, in the way of his business. The guaranty is not confined to one instance, but applies to debts successively renewed. If a party means to be a surety only for a single dealing, *he should take care to say so.* By such an instrument as this, a continuing suretyship is created, to the specified amount." That this decision embraces the the case in hearing, and extends beyond it, no person can doubt

*Windham,*
July,
1823.

Rapelye
*v.*
Bailey.

On the whole, the construction of the defendant's contract is so indisputably obvious, that a determination in his favour, would be in the face of the clearest language, and the clearest intention.

The other Judges were of the same opinion.

New trial not to be granted.