# WILLIAM TAUSSIG *et al.*

## *v.*

## SIMON REID *et al.*

*Filed at Ottawa, January 19, 1893.*

1.  GUARANTY—*notice of acceptance—when necessary.*  In the case of a written guaranty for a debt yet to be created and uncertain in its amount, the guarantor is entitled to have notice, within a reasonable time, that the guaranty is accepted, and that credit has been given on the faith of it.

2.  SAME—*default of payment—notice to guarantor.*  In case of a collateral continuing guaranty for the payment of goods to be thereafter sold, the law requires that the holder of the same, who from time to time sells goods on its faith, shall give the guarantor reasonable notice of the default of payment on the part of the principal debtor, and the guarantor will be discharged from liability so far as he may sustain loss or damage resulting from a failure of the creditor to give him such notice.

3.  Where notice of the default of the principal debtor to make payment can result in no benefit to the guarantor, as where the former is insolvent when the guaranty is executed and remains in that condition, a failure to give notice of the default can not be relied on as a defense to an action on the guaranty.

4.  Where the guaranty is an absolute one, the guarantor is not entitled to demand or notice of non-performance, but when the undertaking is collateral, notice must be given in a reasonable time, unless circumstances exist which will excuse the want of notice.  If the principal is insolvent when the debt becomes due or default is made, so that no benefit can be claimed by the guarantor from the receipt of notice, none is required.

5.  Where the payee of a promissory note or a third party executes a contract written on the back of an unconditional note for the payment of money at a specified time, in which he guarantees the payment of the note at maturity, the holder of the note is under no obligation to demand payment of the maker, and on default of payment notify the guarantor.

6.  Where A made and delivered to B a written guarantee of the prompt payment of all debts which C might make by the purchase of goods from B in the future, with interest thereon, B not being obliged to sell or C to purchase any goods, the undertaking of A will not be an absolute guaranty, but a conditional or collateral one, and notice will be required to be given to A of the failure of C to pay for goods bought by him, unless such notice would be of no benefit to A.

7.  SAME—*collateral for continuing debts, construed.*  A written guaranty was as follows: "For value received, I hereby guarantee the prompt payment at maturity of any indebtedness owing to R., M. & F. by Z. of  *  *  *  for goods purchased, or which may be purchased hereafter of them, to the amount of fifteen hundred dollars, with interest, etc."  *Held,* that the amount stated was a limitation upon the liabilty of the guarantor and not a limitation upon the credit to be extended to Z.

8.  Such instrument is a continuing guaranty, and plainly contemplated that payments made, or indebtedness otherwise settled by Z, should not affect the guarantor's liability for indebtedness incurred by Z for goods purchased and not paid for at maturity.  It looked to a future course of dealing for an indefinite time, and the guarantor undertook to be liable to the extent of $1,500 for *any* indebtedness contracted in the course of such dealings, and not paid by Z at maturity.

9.  The weight of authority seems to be in favor of construing such a contract of guaranty by rules at least as favorable to the creditor as those applied to other written contracts, notwithstanding the guarantor is, in a sense, to be regarded as a surety.  The previous condition of the debtor's account with the creditor's does not in any wise affect the liability of the guarantor.

10.  On a guaranty that a party purchasing goods shall pay for the same at maturity, no liability will attach to the guarantor for any purchases before the expiration of the term of credit given.  What will be a reasonable time in which to give a guarantor notice of non-payment by his principal, depends upon the circumstances in each particular case.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. R. S. TUTHILL, Judge, presiding.

Messrs. KRAUS, MAYER & STEIN, for the appellants.

Messrs. HOFHEIMER & ZEISLER, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Reid, Murdoch & Fischer against E. Kohn and Wm. Taussig, on the following written instrument:

"REID, MURDOCH & FISCHER, *Chicago:*

"CHICAGO, January 14, 1887.

"For value received, I hereby guarantee the prompt payment at maturity of any indebtedness owing to Reid, Mur-

doch & Fischer, by Mrs. Mathilde Zuckerman, of 370 State street, and 214 and 216 North Clark street, Chicago, for goods purchased, or which may be purchased hereafter of them, to the amount of fifteen hundred dollars ( $1,500.00 ), with interest on all the above indebtedness, according to the tenor and effect thereof, at the rate of eight per cent per annum, and I agree to pay all costs or expenses paid or incurred in collecting the same.

Signed at Chicago, this 14th day of January, 1887.

"Witness: Jos. ZUCKERMAN.     (Signed) E. KOHN.
                                (Signed) WM. TAUSSIG."

In the Circuit Court the plaintiffs recovered a judgment for $1,680.34, the amount named in the instrument, and interest thereon from the time the action was brought. The judgment, on appeal, was affirmed in the Appellate Court, and for the purpose of reversing the latter judgment this appeal was taken. It appears from the record that, immediately upon the execution and delivery of the writing, Reid, Murdoch & Fischer commenced selling goods to Mrs. Zuckerman on credit, and continued the sales until November 23, 1887. Her indebtedness to the firm varied in amount from time to time. On the first day of June, 1887, she was indebted in the sum of $1,762.30. On the 1st of July, 1887, $1,958,39. On the 1st of August, 1887, $1,925.98. On the 1st of September, $2,112.68. On the 1st of October, 1887, $2,342.80. On the 1st of November, 1887, $2,389.51. On November 23, 1887, when the account was closed, $2,714.96.

Mrs. Zuckerman failed on the 24th day of November, 1887, and this action was brought on the guaranty December 9th following. No notice was given the defendants by Reid, Murdoch & Fischer of the failure of Mrs. Zuckerman to pay for the goods which she purchased, and it was insisted on the trial that her insolvency, and the failure of Reid, Murdoch & Fischer to give notice of her

default in payment, relieved the guarantors from liability on the guaranty. But the court held otherwise, and in the first instruction on behalf of plaintiffs the jury were authorized to find for the plaintiffs, although demand and notice of non-payment had not been established, and the soundness of this ruling is the principal, and indeed the only, question of any importance presented by the record.

Whether notice of the default of a principal debtor is required in order to fix the liability of a guarantor on a contract like the one involved, is a question upon which the authorities are conflicting. We shall not attempt to review the authorities at length, nor shall we attempt to harmonize the various decisions bearing upon the question, but we shall content ourselves by stating what we understand to be the law on the subject, as established by the weight of authority.

Story on Contracts, vol. 2, sec. 1133, in the discussion of the question, says: "Whenever the undertaking by a guarantor is absolute, notice is unnecessary, but where it is collateral merely, notice must be given within a reasonable time, otherwise the guarantor will be discharged, unless he is not prejudiced by the want of notice." In Baylies on Sureties and Guarantors, 202, the author says: "It may be laid down as a general rule, that in case of an absolute guaranty the guarantor is not entitled to demand or notice of non-performance, but where the undertaking is collateral, and not absolute, notice must be given within a reasonable time, unless circumstances exist which will excuse the want of notice. If the principal is insolvent when the debt becomes due or default is made, so that no benefit could be derived by the guarantor from the receipt of notice, no notice is required."

Where the payee of a promissory note or third parties execute a contract written on the back of an unconditional promissory note for the payment of money at a specified time, in which they guarantee the payment of the promissory

note at maturity, the holder of the note is under no obligation to demand payment of the maker, and, on default of payment, notify the guarantors.    The reason is obvious. The contract of the guarantors is absolute and unconditional, and it requires payment by the guarantors upon maturity of the note.    This rule is clearly laid down in *Gage* v. *Mechanics National Bank of Chicago,* 79 Ill. 62, and is well sustained by authority.  The principle upon which this doctrine rests is that the contract is absolute, and not conditional or collateral.    But does the contract upon which this action is brought rest upon the same principle, or is it to be governed by a different rule?    Is the contract in question an absolute contract, or is it collateral or conditional?    By the terms of the agreement the appellants guaranteed appellees payment to the amount of $1,500, for goods purchased, or for goods which might thereafter be purchased of them, by Mathilde Zuckerman.

It is not claimed that any liability exists on account of goods purchased before the execution of the guarantee, so that the words embraced in the guaranty, "for goods purchased," has no special bearing in construing the agreement. It will be observed that the amount of the goods which might be purchased, nor the time during which the deal between Mrs. Zuckerman and appellees should continue, was not mentioned or determined.  The contract did not compel Mrs. Zuckerman to purchase or appellees to sell a dollar's worth of goods.    They could deal with each other as much or as little as they might desire or as they might see proper.   After the guaranty was executed, if appellees chose not to sell Mrs. Zuckerman any goods, it could not be claimed that an absolute guaranty existed, because there was no debt upon which it could operate.   How can a guaranty be absolute where it is uncertain whether a debt will ever exist to which it could apply?    We think it is manifest that the guaranty was not an absolute undertaking, but, on the other hand, the contract in question was a continuing guaranty of a debt

to be created in the future, of an indefinite amount, depending entirely upon the will of appellees and Mrs. Zuckerman.

In *Douglass* v. *Reynolds*, 7 Peters, 113, where an action was brought on a guaranty of $8,000, on account of the advancement of cash or acceptance or indorsement of the principal's paper to assist him in business, it was held that demand of payment and notice to the guarantors were required. It is there said: "By the very terms of this guarantee, as well as by the general principles of law, the guarantors are only collaterally liable upon the failure of the principal debtor to pay the debt. * * * The creditors are not indeed bound to institute any legal proceedings against the debtor, but they are required to use reasonable diligence, to make demand and to give notice of the non-payment." In *McDougal* v. *Calef*, 34 N. H. 534, in an action on a guaranty for goods purchased, it was held that where the undertaking was absolute, notice is unnecessary; but where it is collateral merely, notice must be given within a reasonable time, otherwise the guarantor will be discharged, unless he be not prejudiced by the want of notice. In *Smith* v. *Bainbridge*, 6 Blackford, 12, in an action against a guarantor for goods sold to another, the contract was held to be collateral. It is there said: "Letters of credit * * frequently state, in express terms, that if the third party do not pay, the writer will. But the insertion or omission of such statement is not the test by which to determine the character of the contract. If the writer states that he will guarantee the payment of the goods to be afterwards sold to another, or that he will see the goods paid for, or that he will be security for their payment, the promise is only collateral. In the same case it was also held that demand of payment from the principal and notice of non-payment to the guarantor was required. In *Babcock* v. *Bryen*, 12 Pick. 133, where an action was brought on an agreement, which read as follows: "New Bedford, November 20, 1826. This is to certify that I,

the subscriber, do hereby agree to be responsible and pay
Messrs. Babcock & Allen for whatever goods have been or
may be delivered to Thos. C. Case.'' In passing upon the
obligation of the parties to the contract, the court said ''the
question is whether the promise is to be considered as an
original or a collateral undertaking. We think it is the lat-
ter. * * * The claim of the plaintiffs is for goods de-
livered after the making of the promise, for which Case
gave to them his negotiable note. If he were not the prin-
cipal debtor, it is difficult to account for the plaintiffs' hav-
ing taken the note of him. They must have understood that
he was liable in the first instance. It would follow, that the
meaning of the parties to the contract now in question was
that the defendant was to be liable to pay if the principal
debtor did not, and if the defendant should have reasonable
notice of the default of the principal.''

In *Mussey* v. *Raynor*, 22 Pick. 223, which was an action
on a guaranty, it is said: The general rule of law on this
subject seems now to be well settled, requiring that in cases
of a written guaranty for a debt yet to be created and un-
certain in its amount, the guarantor should have notice in a
reasonable time that the guaranty is accepted and that credit
has been given upon the faith of it. See also *Allen* v.
*Pike*, 3 Cush. 238; *Norton* v. *Eastman*, 4 Greenleaf, 521;
*Howe* v. *Nichols*, 22 Me. 175; 2 Parson on Contracts, 28.

Here the appellants were apprised when they executed
the guaranty that it was accepted by appellees; no further
notice of acceptance was, therefore, required. But while
the testimony disclosed that Mrs. Zuckerman became insolv-
ent on the 24th day of November, 1887, no notice of her
default in payment was furnished to appellants before her
failure. We think that the decided weight of authority
establishes the rule, that in case of a collateral continuing
guaranty, like the one in question, reasonable notice of the
default of payment on the part of the principal debtor
should be given to the guarantor. And the guarantor will

be discharged from payment, so far as he has sustained loss or damage, resulting from a failure of the creditor to give him such notice. Tiedeman on Com. Paper, 421. Cases may arise where notice would result in no benefit whatever to the guarantor; for example, where the principal debtor was insolvent when the guaranty was executed and remained in that condition. In such cases the failure to give notice could result in no loss to the guarantor, and could not be relied upon as a defense to an action on the guaranty. But where the guarantor may be able to protect himself, notice of default in payment imposes no unreasonable hardship on the creditor, and every principle of commercial usage requires that it should be given.

Subsequently, on petition for re-hearing, the following additional opinion was filed:

PER CURIAM: Upon the filing of the foregoing opinion, judgment was entered reversing and remanding the cause for a new trial. Upon petition for re-hearing points were made to which our attention had not been directed, and we have again considered the case. Counsel for appellees, conceding the correctness of the views expressed, insist that a reversal should not be had because of the error in giving said instruction, for the reason that at the time Mrs. Zuckerman became insolvent November 24, 1887, there was more than $1,500 of the indebtedness to plaintiff not due, and in respect of which there had been no default of payment; and the rule being that in case of insolvency, notice of non-payment in such case being without avail, and not required to be given, the guarantors were not released from liability in respect of such indebtedness. It is conceded that over $1,500 of the indebtedness from Mrs. Zuckerman to plaintiffs had not matured at the date she became insolvent. It is, therefore, said that if the instruction is erroneous, as applied to the facts of this case it was not prejudicial error. It would follow from the principles before announced, if the amount of $1,500 was due when this suit

was brought, which was not due on the 24th of November, 1887, notice of non-payment thereof would have been unavailing to the guarantors.

It is insisted, however, that although there was over $1,500 not due from Mrs. Zuckerman when she became insolvent, the guarantors were discharged from liability, because after the execution of the guaranty she made default in payments in excess of $1,500, of which no notice was given to the guarantors. It is shown that, commencing in February, 1887, considerable balances remained unpaid, and on the 18th of April, 1887, she was in default in payment of over $1,800, and that a note or notes were taken in settlement of the amount then due; that subsequently to that date she was in default in payment of various sums aggregating, October 24, 1887, something over $1,100.

As this cause must be again submitted for trial, we have deemed it proper to notice this insistence. The position of appellants is untenable. They guaranteed the prompt payment at maturity of any indebtedness owing by Mrs. Zuckerman to the plaintiffs for goods purchased, or thereafter to be purchased of them, to the amount of $1,500. This amount stated in the guaranty was a limitation upon the liability of the guarantors, and not a limitation upon the credit to be extended to Mrs. Zuckerman. It was, as we have seen, a continuing guaranty, and plainly contemplated that payments made, or indebtedness otherwise settled by Mrs. Zuckerman, should not in any wise affect their liability for inbebtedness incurred by her for goods purchased and not paid for at maturity. The contract of guaranty looked to a future course of dealing for an indefinite time, that is, a succession of credits was to be extended, and the guarantors undertook to be liable to the extent of $1,500 for *any* indebtedness contracted in the course of such dealings, and not paid by Mrs. Zuckerman at maturity. Without extending this opinion by citation from the authorities, it will be found that the position taken is supported by *Bent et al.* v.

*Hartshorn,* 1 Metc. 24; *Douglass* v. *Reynolds,* 7 Peters, 113; *Hatch* v. *Hobbs,* 12 Gray, 447; *Melemby* v. *McKee,* 13 N. Y. 232; *Rindge* v. *Judson,* 24 id. 64; *Grant* v. *Ridgedale,* 2 Har. & J., 186; *Mason* v. *Prichard,* 12 East, 227; *Rapalye* v. *Bailey,* 5 Conn. 149; *Hargrave* v. *Smee,* 6 Bing. 244; *Martin* v. *Wright,* 6 Adolph. & E., 917; *Crittenden* v. *Fiske et al.,* 46 Mich. 70, and other cases.

It can not be said that the cases are entirely harmonious as to the principles which govern in the construction of this class of instruments. But the weight of authority seems to be in favor of construing them by rules at least as favorable to the creditor as those applied to other written contracts, notwithstanding the guarantor is, in a sense, to be regarded as a surety. In *Mason* v. *Prichard, supra,* it is held, that the words are to be taken as strongly against the party giving the guaranty as the sense of them will admit. The same general principle is held, more or less directly, in *Drummond* v. *Prestmond,* 12 Wheat. 515; *Douglass* v. *Reynolds, supra; Lawrence* v. *McCalmont,* 2 How. 426; *Bell* v. *Bruin,* 1 How. 69; *Dobbins* v. *Bradley,* 17 Wend. 422; *Mayer* v. *Isaacs,* 6 Mees. & Welsb. 605.

Taking the language of this instrument, and construing it in the light of the circumstances surrounding, it seems clear that it was intended that Mrs. Zuckerman should have credit with the plaintiffs, and that appellants would be liable for any balance that might remain unpaid at maturity at any time during the continuance of the guaranty. That is, that it was intended to give her credit with the plaintiffs to the amount of $1,500, until the guaranty should be revoked. We are of opinion, that the previous condition of her account with the plaintiffs in no wise affected the liability of the guarantors for any sum owing by Mrs. Zuckerman, from which they had not been discharged by the failure of the plaintiffs to give notice, within a reasonable time, of non-payment.

It will, however, be observed that the contract of the guarantors is, that Mrs. Zuckerman would pay promptly "at maturity" any indebtedness, etc. Counsel for appellees show conclusively, that at least $578.18 of the indebtedness of Mrs. Zuckerman was not due until after the 15th day of December, 1887. After giving the items of sales of goods by plaintiffs to Mrs. Zuckerman, from the 15th to the 23d of November, counsel say: "The earliest of these sales was made on November 15th, and, therefore, the credit on the same did not expire until December 15th, and those following became due at a correspondingly later period." It was conceded, and is shown by the record, the amount sold on each day was treated as a separate transaction, and the indebtedness for the day's sales would mature at the end of the credit given. That is, the credit being thirty days, the indebtedness contracted on the 15th of November would become due December 15th, and that contracted on subsequent days at corresponding dates in December. The same is true of the goods purchased on the 9th, 10th, 11th, 12th and 14th days of November, as shown by the record, and amounting in the aggregate to several hundred dollars. It is apparent, therefore, that on December 9, 1887, these several amounts had not matured, and the liability of appellants, for their prompt payment at maturity, had not attached. Counsel for appellees are correct in their contention that the record shows that these goods were mainly, at least, sold upon thirty days' time, and there is nothing shown by which the credit could, at the option of the plaintiffs, be shortened. This suit was brought December 9, 1887, and it is clear that the liability of the guarantors in respect of such sales had not attached. If suit had been brought against Mrs. Zuckerman at that time, a complete defense as to these items of indebtedness would have existed, because they had not matured at the time the suit was brought. The indebtedness not having matured, there was no liability upon the guaranty therefor.

A casual examination of the accounts will show, that if reasonable time of giving notice of non-payment be allowed, and for this purpose the accounts maturing on and before the 18th of November only be excluded because of failure to give notice of non-payment, it will be found that much less than $1,500 of the indebtedness of Mrs. Zuckerman to the plaintiffs had matured on the 9th of December, 1887. It can not be presumed that there was included in the judgment, which was for the full amount of the guaranty, indebtedness not matured, and it is, therefore, clear that the instruction complained of must have led the jury into the error of taking into consideration, in determining the amount for which appellants were liable, the indebtedness of Mrs. Zuckerman that had matured before the 18th of November, and in respect of which appellants' liability as guarantors had been discharged.

What will be reasonable time in which to give notice, must depend upon the circumstances in each particular case (*Dickerson* v. *Derrickson*, 39 Ill. 574; 2 Par. on Con., 174), and while it is not necessary to determine the question, it would seem, from the facts here shown, that five days' time would at least be reasonable within which to give notice of non-payment.

Other errors are assigned, which will undoubtedly be corrected upon another trial, and need not be considered. We are of opinion that the judgment heretofore entered, reversing the judgments of the Appellate and Circuit Courts, and remanding the cause, was correct, and the same judgment will be again entered.           *Judgment reversed.*