## Knut A. Gustafson et al. v. Charles Swanson.

### Gen. No. 13,081.

1. SURETY—*when not entitled to notice of principal's default.* A surety cannot complain of the failure to give him notice of his principal's default where no damage resulted from the failure to give such notice.

Action of *assumpsit.* Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed March 5, 1907.

Statement by the Court. December 8, 1901, the appellant, Gustafson, Bradford C. Richmond and Eugene Smith, executed in writing the following contract:

"THIS IS TO CERTIFY That I, Chas. Swanson, of the Town of Crisman, County of Porter, and State of Indiana, do hereby make and appoint Bradford C. Richmond, of Elburn, Illinois, and Eugene Smith, of Chicago, Illinois, my agents for five years, for me and in my name, place and stead to bargain, sell and contract for the sale of all milk I produce for the Chicago Market. Prices as suggested by the Milk Dealers' Union shall be the lowest price at which milk shall be sold. Milk shipped by me is to be paid for monthly on or before the 10th of each month for milk shipped the previous month, and all payments are to be made by the dealer to Chas. Swanson. Such milk shall be mer-

chantable milk of a quality that will pass State and
City inspection and is to be delivered in good con-
dition at a milk delivering platform on the B. & O.
Railroad, in Chicago, Illinois.

"Said agents may contract for the sale of the entire
product of my dairy, except the milk I use at my home,
for not longer than six months at any one time, with
acceptable dealer or dealers, which I agree to deliver
during the life of any contract made. Should I at any
time have more milk than is provided for in the con-
tract with the dealer or dealers I will withhold ship-
ment of same until a market is found for the surplus
amount.

"I reserve the right to sell my milk to condensing
factories or creameries or dispose of the cows owned
or controlled by me and to discontinue producing or
shipping milk at any time, when said act will in no way
affect any contract I may have with the dealer or deal-
ers provided I give said agents thirty days' written
notice prior to such act.

"I agree to pay said agents each and every month,
for their services, a commission of one cent per can
for milk sold and paid for.

"Said agents shall give me 10 days' notice prior to
the commencement of their services.

"I represent that I own or control 25 cows, and pro-
duce an average of 4 cans per month from November
1st to April 30th inclusive and 6 cans per month from
May 1st to October 30 inclusive.

"WITNESS my hand and seal this 3rd day of Oct.,
A. D. 1901.

                              CHAS. SWANSON,    [SEAL.]
Witness:
     N. F. SELLERS.

                    "ACCEPTANCE.

"We, Bradford G. Richmond and Eugene Smith,
do hereby accept the agency above defined, upon the
conditions above named, and in consideration of said
appointment, we agree to use our best efforts to ad-
vance the interests of said Chas. Swanson and relieve
him from all details (namely, requiring financial
statement or security from dealers, looking after the

returning of empty cans, etc., etc.,) in connection with the sale of the milk shipped to Chicago. We agree to execute and place in escrow a bond to secure the faithful performance of our duties.

Dated at Chicago, Ill., Oct. 21, 1901.

BRADFORD C. RICHMOND,<br>EUGENE SMITH.

Witness:

     H. B. BEATTY.''

July 10, 1902, the appellants, Gustafson and Trainor, executed in writing the following contract with the Richmond-Smith Co.:

CHICAGO, July 10, 1902.

''RICHMOND-SMITH Co., AGENT.

DEAR SIR: Please have shipped daily 8 cans, more or less, of clean, pure, sweet and merchantable milk, delivered at the shipping station addressed to K. A. Gustafson, at the following schedule of prices per can for the months specified, respectively, to-wit.: Jan., $——; Feb., $——; March, $——; April, $——; May, $——; June, $——; July, $.85; Aug., $.90; Sept., $.95; Oct., $.95.

''We agree to receive said milk from July 1, 1902, to Oct. 31, 1902, inclusive, and pay for same to the shipper or shippers, or Richmond-Smith Co., their agent, on or before the 5th day of each month for all shipments made during the preceding month.

''We agree to return all cans promptly in as good condition as received, less natural wear.

''All requests for holding milk, or complaints will be made through Richmond-Smith Co., Agent.

''We agree to report to Richmond-Smith Co., Agent, at end of each month the number of cans received from each shipper.

Railroad, B. & O.

Platform, 93d St.

K. A. GUSTAFSON,

Business Address, 54 91st St.

House Address,

CHARLES J. TRAINOR,

Business Address, 1112-12 Schiller Bldg.

House Address, 905 E. 72d St.''

In pursuance of these contracts milk was shipped by appellee, Swanson, to Gustafson during the months of September and October, 1902, for which appellee claimed there was a balance due and unpaid. The jury found for appellee and assessed his damages at the sum of $167.19, and judgment was rendered on the verdict.

JOHN C. TRAINOR, for appellants.

JAMES TURNOCK, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The contentions of appellants' counsel are: (1) Appellee failed to prove that the Richmond-Smith Co., with whom appellants made the contract of July 10, 1902, was his agent; (2) that appellant Trainor signed the contract only as surety, and bound himself to the Richmond-Smith Co. only, and his liability cannot be extended to include a contract made by appellee, he not being the principal of the Richmond-Smith Co.; (3) that appellant Trainor received no notice of Gustafson's default; (4) that the appellee was engaged in an unlawful combination in restraint of trade; (5) that the court erred in refusing the instructions requested by the appellants and in giving an instruction, and (6) that the court erred in rulings on the admission and exclusion of evidence.

It appears from the contract of December 8, 1902, that Bradford G. Richmond and Eugene Smith were the agents of appellee, and it appears from other evidence that said Richmond and Smith constituted the Richmond-Smith Company.

Gustafson testified that Richmond-Smith was the agent, and acted under the contract of December 8, 1902, and identified a letter of date July 14, 1902, written to him about the shipment of milk by him, and signed "Richmond-Smith Co." Also, that he quit shipping milk to one Erickson at the request of the

Richmond-Smith Co.; also, that the Richmond-Smith Co. procured him to sign the December 8th contract.

H. G. Beatty testified that he had charge of the office of the Richmond-Smith Co., and that the company was organized in 1901. The trial occurred in the early part of December, 1905, and one of the witnesses testified that he had done business with the company since they started business four years ago, or in 1901. Another witness testified that he knew the Richmond-Smith Co., and had dealings with it from November, 1901, till April, 1902. The contract of July 10, 1902, which includes an order for the milk, is addressed to "Richmond-Smith Co., Agent," and the evidence clearly shows that company to have been the agent of appellee, and that the Richmond-Smith Co. directed the appellee to ship the milk. Appellee clearly recognized the Richmond-Smith Co, as his agent.

The contract of appellants with the Richmond-Smith Co., of date July 10, 1902, created that company the agent of appellants, to procure the shipment to Gustafson of milk at the prices specified in the contract. Appellants' counsel urges that appellant Trainor was only surety for Gustafson and that his liability must be strictly construed. He may have been surety as between him and Gustafson, but as between him and the Richmond-Smith Co. and Swanson, he is a principal in the contract of July 10, 1902. He ordered the milk for Gustafson through the Richmond-Smith Co., and is equally liable with Gustafson for the milk shipped and delivered in pursuance of that order. The doctrine of suretyship has no application to the facts of the case. The liability of appellant Trainor is absolute, by the contract of July 10th; and, as between him and appellee Swanson, he was not entitled to any notice of Gustafson's default in failing to pay for the milk, and even though he were entitled to notice, he could not avail of the want of it, without evidence of loss or damage. Mamerow v. National

Lead Co., 206 Ill. 626, 636. There is no such evidence in the record.

The fourth contention of appellants' counsel is that the plaintiff was engaged in an unlawful combination in restraint of trade, and therefore cannot recover. This is not sustained by the evidence. The contention is based on the statute, section 1 *et sequens* of chapter 38 of the Revised Statutes in respect to combinations to fix prices. Hurd's Rev. Stat. 1905, p. 725. The evidence shows that the Milk Shippers' Union mentioned in the contract of December 8, 1901, is an association of farmers scattered throughout Illinois, Indiana and Wisconsin, which fixes the price of milk for six months in advance; but the evidence shows that neither the appellee, the seller of the milk, nor the Richmond-Smith Co., appellee's agent, is a member of that union, and it is not claimed that either of the appellants, the purchasers of the milk, is a member of the Milk Shippers' Union. Conceding, for the sake of the argument, that the Milk Shippers' Union is an illegal combination or association within the meaning of the statute, it by no means follows that if A., not a member of that association, sells milk to B., who is not such member, the sale is, within the meaning of the statute, illegal, merely because the price agreed on between A. and B. had also been agreed on as the price of milk by an illegal association or combination of persons. If such were the case it might well happen that no dealer in or retailer of milk, in the city of Chicago, could legally procure milk for sale and delivery to his customers, and the supply to consumers might be entirely cut off, and thus innocent parties, for whose protection the statute was enacted, made to suffer.

Ford v. Chicago Milk Shippers' Association, 155 Ill. 166, cited by appellants' counsel, has no application to the facts of this case.

The appellants' counsel does not argue that any ruling of the court on the admission or exclusion of

evidence was erroneous; therefore objections to such rulings must be deemed waived.

Instructions 1 to 7, both inclusive, were properly refused. They are framed on the theory that there was an unlawful combination to fix the price of milk, to which appellee was a party, and there is no evidence to support the theory that appellee was a party to any such combination. The 8th instruction requested by appellants' counsel was properly refused; but the court properly modified the instruction and gave it as modified, and we find no error in the modified instruction, nor does the bill of exceptions contain any exception to the modification of the instruction or the giving it as modified.

We are of opinion, from inspection of the entire record that substantial justice has been done between the parties, and the judgment will be affirmed.

*Affirmed.*